UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 23-1047 JGB (SPx)** | Date | September 15, 2023 |
| Title | *Jacqueline Palmer, et al. v. Rob Bonta, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):         Attorney(s) Present for Defendant(s):

None Present                                              None Present

**Proceedings:** Order (1) GRANTING-IN-PART and DENYING-IN-PART Defendants' Motion to Dismiss (Dkt. No. 19); and (2) VACATING the September 18, 2023 Hearing (IN CHAMBERS)

    Before the Court is a motion to dismiss filed by Defendants Rob Bonta, Kristina Lawson, and Loretta Melby (collectively, "Defendants") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] ("Motion," Dkt. No. 19.)  The Court finds this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion.  The September 18, 2023 hearing is **VACATED**.

I.  BACKGROUND

    On June 6, 2023, Plaintiffs Jacqueline Palmer, Heather Lewis, and Rodolfo Jaravata-Hanson (collectively, "Plaintiffs") filed a complaint for declaratory and injunctive relief against Defendants.  ("Complaint," Dkt. No. 1.)  The Complaint alleges one cause of action for violation of Plaintiffs' First Amendment right to freedom of speech pursuant to 42 U.S.C. § 1983.  (Id.)

    On August 2, 2023, Defendants filed this motion to dismiss.  (Motion.)  On August 28, 2023, Plaintiffs opposed the Motion.  ("Opposition," Dkt. No. 23.)  In support of the

---

[1] All subsequent references to "Rule(s)" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

Opposition, Plaintiffs requested judicial notice of one exhibit. ("Request," Dkt. No. 24.)[2] On September 1, 2023, Defendants replied. ("Reply," Dkt. No. 31.)

On September 5, 2023, the Court granted leave to file an amicus curiae brief by the California Medical Association and the American Medical Association. (Dkt. No. 32.) On September 6, 2023, the California Medical Association and American Medical Association filed an amicus curiae brief. ("Amicus Brief," Dkt. No. 33.) On September 7, 2023, Plaintiffs responded to the Amicus Brief. ("Amicus Response," Dkt. No. 34.)

## II. FACTUAL ALLEGATIONS

Plaintiffs allege the following facts, which are assumed to be true for the purposes of this Motion. See Swift v. California, 384 F.3d 1184, 1188 (9th Cir. 2004).

California Business and Professions Code § 2054(a) ("Section 2054") provides, in relevant part: "Any person who uses in any sign, business card, or letterhead, or, in an advertisement, the words 'doctor' or 'physician,' the letters or prefix 'Dr.,' the initials 'M.D.,' or any other terms or letters indicating or implying that he or she is a physician and surgeon . . . without having at the time of so doing a valid, unrevoked, and unsuspended certificate as a physician and surgeon under this chapter, is guilty of a misdemeanor." (Complaint ¶ 12.)

Defendant Rob Bonta ("Bonta") is the Attorney General of the State of California. (Id. ¶ 9.) As Attorney General, he has primary responsibility for the judicial enforcement of the state's laws, including Section 2054. (Id.) Bonta has authority to bring actions for violations of the state's laws before the state's regulatory boards, including the Board of Registered Nursing. (Id.) The Attorney General has direct supervision over every district attorney in all matters pertaining to the duties of their offices. (Id.) Bonta is sued in his official capacity. (Id.)

Defendant Kristina Lawson ("Lawson") is the President of the Medical Board of California ("Medical Board"). (Id. ¶ 10.) The Medical Board is responsible for regulating and licensing the practice of medicine in California, as well as investigating violations of and enforcing the Medical Practice Act, Cal. Bus. & Prof. Code § 2000, et seq. (Id.) Lawson is sued in her official capacity. (Id.)

---

[2] Plaintiffs request judicial notice of a November 14, 2022 news article on the official website of San Luis Obispo County entitled "District Attorney Announces Civil Settlement with Nurse Practitioner for Unlawfully Advertising Herself as 'Doctor.'" (See Request; "Exhibit 1," Dkt. No. 24-1.) Although the Court can take judicial notice of "public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies," the Court does not rely on Exhibit 1 in this Order. See Gerritsen v. Warner Bros. Ent., Inc., 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (internal quotation marks, alteration, and citation omitted). As such, the Request is **DENIED AS MOOT**.

Defendant Loretta Melby ("Melby") is the Executive Officer of the California Board of Registered Nursing ("Board of Registered Nursing"). (Id. ¶ 11.) The Board of Registered Nursing is responsible for regulating and licensing the practice of nursing in California, as well as investigating violations of and enforcing the Nursing Practice Act, Cal. Bus. & Prof. Code § 2700, et seq. (Id.) Melby is sued in her official capacity. (Id.)

In August 2019, an anonymous individual filed a complaint with the Medical Board that a nurse practitioner named Sarah Erny ("Erny") was using the title "Dr." with patients at her clinic and on her website. (Id. ¶ 14.) The complaint triggered an investigation by the Health Quality Investigation Unit, the investigative body of the Medical Board and part of the Department of Consumer Affairs' enforcement unit. (Id.) On August 25, 2022, Bonta filed an Accusation before the Board of Registered Nursing. (Id. ¶ 15.) The Accusation, which acknowledged that Erny holds a Doctorate in Nursing Practice, sought to revoke or suspend her Registered Nursing license and her Nurse Practitioner certificates. (Id.) The Accusation was based, in part, on alleged violations of Section 2054. (Id.)

On October 27, 2022, acting under Bonta's authority, the District Attorney for San Luis Obispo County filed a complaint against Erny alleging, in part, violation of Section 2054. (Id. ¶ 16.) Erny entered into a stipulated agreement to resolve the District Attorney's case. (Id. ¶ 17.) Pursuant to the Final Civil Judgment and Court Order According to Stipulation, Erny was required to pay $19,750 in civil penalties and to immediately cease using the title "Dr.," even though she is a Doctor of Nursing Practice. (Id.) On January 4, 2023, the Medical Board issued a Citation for a violation of Section 2054. (Id. ¶ 18.) The Citation ordered Erny to pay $2,500 in fines and to "immediately cease and desist the use of the initials 'Dr.'" (Id.)

Plaintiffs learned about the enforcement actions against Erny through the media. (Id. ¶ 19.) Plaintiffs each hold a Doctorate in Nursing Practice. (See id. ¶¶ 6–8.) As Doctors of Nursing Practice who have used, use, or intend to use the title "Dr." in their practice and on websites and social media, Plaintiffs fear that Defendants will take action against them similar to those taken against Erny. (Id. ¶ 19.)

Plaintiff Jacqueline Palmer ("Palmer") began her nursing career with 2003 and earned a Doctorate in Nursing Practice in 2020. (Id. ¶ 6.) At the family practice clinic where she serves primary care patients, Palmer's colleagues, including physicians, have never expressed concerns that she is referred to as "Dr. Palmer, FNP." (Id. ¶ 20.) When she interacts with her patients, she explains that she is a Nurse Practitioner and not a physician. (Id.) Her clinician's jacket has her name embroidered with "Dr. J. Palmer, FNP-C." (Id.) Palmer has never misrepresented to anyone, directly or indirectly, that she is a physician, nor have her patients or physician colleagues mistaken her for a physician. (Id. ¶ 21.) Since learning about Defendants' actions against Erny, Palmer no longer signs her name with the title "Dr." (Id. ¶ 22.) She has hung up her clinician's jacket embroidered with "Dr. J. Palmer, FNP-C." (Id.) She has asked others in the clinic not to refer to her as "Dr." and has refrained from referring to herself as such. (Id.) She fears that Defendants will bring an enforcement action against her. (Id.)

Plaintiff Heather Lewis ("Lewis") earned a Doctorate in Nursing Practice in March 2023. (Id. ¶ 7.) A recent graduate, Lewis intends to change her business cards, office name plate, and scrubs to reflect her latest accomplishments, specifically to read "Dr. Heather Lewis, FNP-C, DNP." (Id. ¶ 23.) On social media, Lewis describes herself as "Dr. Heather Lewis, FNP-C, DNP." (Id.) Since learning about Defendants' actions against Erny, Lewis fears that Defendants will bring an enforcement action against her. (Id. ¶ 24.)

Plaintiff Rodolfo Jaravata-Hanson ("Jaravata-Hanson") earned a Doctorate in Nursing Practice in May 2023. (Id. ¶ 8.) A recent graduate, Jaravata-Hanson intends to use the title "Dr.," qualified by "DNP," to describe his credentials on his business cards, work scrubs, and personal and professional websites. (Id. ¶ 25.) He intends to open his own clinic one day, and he wants to be able to assure patients and potential patients that he has achieved the highest educational qualifications possible for an advanced practice registered nurse. (Id.) Jaravata-Hanson has never misrepresented to anyone, directly or indirectly, that he is a physician, nor does he intend to do so. (Id. ¶ 26.) Since learning about Defendants' actions against Erny, he fears that Defendants will bring an enforcement action against him should he refer to himself as "Doctor" and use the title "Dr." (Id. ¶ 27.)

Plaintiffs have spent years earning their advanced degrees and qualifications and believe they should be able to speak truthfully about them in their workplaces, on their business cards, and on the internet and social media, so long as they clarify that they are nurse practitioners. (Id. ¶ 28.) However, in response to the news of Defendants' actions against Erny, they fear that Defendants will enforce Section 2054 against them even if their use of the title "Dr." includes self-identification as nurse practitioners. (Id.)

### III.   LEGAL STANDARD

**A. Rule 12(b)(1)**

"A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Fam. Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Whisnant v. United States, 400 F.3d 1177, 1179 (9th Cir. 2005).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without

having to convert the motion into one for summary judgment." White, 227 F.3d at 1242. "Where jurisdiction is intertwined with the merits, [the Court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" Warren, 328 F.3d at 1139 (quoting Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

**B.  Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001)).  Courts also need not accept as true allegations that contradict facts which may be judicially noticed.  See Mullis v. U.S. Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

//
//

**C. Rule 15**

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).

## IV.  DISCUSSION

Defendants move to dismiss the Complaint on the grounds that (1) Plaintiffs lack standing and the case is not ripe, and (2) Plaintiffs fail to state a claim. (See Motion at 6–15.) The Court addresses each argument in turn.

**A. Standing**

First, Defendants argue that Plaintiffs lack standing because Plaintiffs have not suffered actual or threatened injury as a result of Defendants' putatively illegal conduct. (See Motion at 6 (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982)). To establish Article III standing, a "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[3] Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). The party invoking federal jurisdiction bears the burden of establishing standing. Id. at 561.

First Amendment challenges raise "unique standing considerations," Ariz. Right to Life Pol. Action Comm. v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003), such that "the inquiry tilts dramatically toward a finding of standing," LSO, Ltd. v. Stroh, 205 F.3d 1146, 1155 (9th Cir. 2000). As the U.S. Supreme Court has recognized, self-censorship is a "harm that can be realized even without actual prosecution." Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 393 (1988). "In an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." Id.; see also Dombrowski v. Pfister, 380 U.S. 479, 486 (1965) ("Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to broad regulations risk prosecution to test their rights."); Bland v. Fessler, 88 F.3d 729, 736–37 (9th Cir.

---

[3] A plaintiff also must demonstrate "a causal connection between the injury and the conduct complained of" and that the injury will "likely" be "redressed by a favorable decision." Lujan, 504 U.S. at 560–61 (citation omitted). Defendants do not dispute that Plaintiffs can meet these two requirements. (See Opposition at 13.)

1996) ("That one should not have to risk prosecution to challenge a statute is especially true in First Amendment cases . . . .").

In pre-enforcement challenges, a plaintiff may meet constitutional standing requirements by demonstrating "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979). A plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief." Id. (quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923)). Rather, it is sufficient for standing purposes that the plaintiff intends "to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Id.; see also Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 (9th Cir. 2003) ("Particularly in the First Amendment-protected speech context, the Supreme Court has dispensed with rigid standing requirements.").

In the Ninth Circuit, courts consider "a number of factors to determine whether plaintiffs who bring suit prior to violating a statute, so-called 'pre-enforcement plaintiffs,' have failed to show that they face a credible threat of adverse state action sufficient to establish standing." See Lopez v. Candaele, 630 F.3d 775, 786 (9th Cir. 2010). "In evaluating the genuineness of a claimed threat of prosecution, courts examine three factors: (1) whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." Libertarian Party of L.A. Cnty. v. Bowen, 709 F.3d 867, 871 (9th Cir. 2013) (quoting McCormack v. Hiedeman, 694 F.3d 1004, 1021 (9th Cir. 2012) (internal quotation marks omitted)). Applying these factors, the Court finds that Palmer has established standing, while Lewis and Jaravata-Hanson have not.

As to the first factor, Palmer has a "concrete plan" to violate the law because she *was* violating the law and can readily resume doing so. At her family practice clinic, her patients and colleagues, including physicians, know her as "Dr. Palmer, FNP." (Id. ¶ 20.) Since learning about Defendants' enforcement actions against Erny, however, Palmer has stopped signing her name with the title "Dr." (Id. ¶ 22.) She has asked others in the clinic not to refer to her as "Dr." (Id.) She used to wear a clinician's jacket with her name embroidered on it as "Dr. J. Palmer, FNP-C," but no longer wears it. (See id.) She intends to use the title "Dr." in her practice since it accurately reflects her qualifications. (See id. ¶ 19.) Thus, she has specified "when, to whom, where, or under what circumstances" she intends to violate the challenged statute—in the same ways she was violating it before. Libertarian Party, 709 F.3d at 871 (quoting Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)).

In contrast, Lewis and Jaravata-Hanson have not established an intent to violate the law that is more than hypothetical. See id. Lewis and Jaravata-Hanson merely allege that they "intend" to change their business cards, office name plates, office scrubs, and personal and professional websites to read "Dr." qualified by their degrees. (See Complaint ¶¶ 23, 25.) Lewis currently describes herself as "Dr. Heather Lewis, FNP-C, DNP" on social media, but has alleged no negative consequences as a result of doing so. (Id. ¶ 23.) Lewis and Jaravata-Hanson

both fear that Defendants will bring enforcement actions against them. (See id. ¶¶ 24, 27.) However, these conclusory allegations are not enough to establish standing because they have not alleged a "concrete plan" to order business cards, office name plates, or office scrubs. "A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." Thomas, 220 F.3d at 1139. Thus, Lewis and Jaravata-Hanson have not met the injury-in-fact requirement of constitutional standing.

As to the second and third factors with respect to Palmer, Defendants point out that Palmer has not received a cease or desist letter threatening an enforcement action, nor any other indication of threatened litigation. (See Motion at 8.) During the years that Palmer referred to herself as "Dr. Palmer, FNP," no state agency initiated, or even threatened, an enforcement action against her. (See id.) Defendants argue that since they have not communicated a specific warning or threat to initiate proceedings, Palmer's fear of prosecution is not reasonable. (See id. at 10.) Defendants overlook that in the First Amendment context, self-censorship is a constitutionally recognized injury. See Wolfson v. Brammer, 616 F.3d 1045, 1059 (9th Cir. 2010); see also Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. at 393. A threat of enforcement may be inherent in the challenged statute such as to meet the constitutional requirements of standing and ripeness. See Wolfson, 616 F.3d at 1059; Bayless, 1006–07; see also Getman, 328 F.3d at 1095. "Especially where protected speech may be at stake, a plaintiff need not risk prosecution in order to challenge a statute." Wolfson, 616 F.3d at 1059–60.

Further, where the state fails to disavow an intent to enforce the law, courts typically find a plaintiff's alleged fear of prosecution "real." (See Opposition at 17.) Refusal to disavow "is an attitudinal factor the net effect of which would seem to impart some substance" to a plaintiff's fears. Am. Arab Anti-Discrimination Comm. v. Thornburgh, 970 F.2d 501, 508 (9th Cir. 1991). "So long as the statute remains available to the State the threat of prosecutions of protected expression is a real and substantial one." Dombrowski, 380 U.S. at 494; see also Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. at 393 (where the state had not disavowed enforcement, the court found "no reason to assume otherwise"). Here, Defendants do not disavow an intent to enforce Section 2054 against Palmer. In fact, they enforced it against Erny in the last year. (See Complaint ¶¶ 15–18.) "It was not unreasonable for [Palmer] to modify [her] behavior out of fear of being the object of an enforcement action." See Bayless, 320 F.3d at 1006; see also id. at 1007 ("[W]e observe that it would turn respect for the law on its head for us to conclude that [the plaintiff] lacks standing to challenge the provision merely because [the plaintiff] chose to comply with the statute and challenge its constitutionality, rather than to violate the law and await an enforcement action."). Accordingly, the Court concludes that Palmer faces a credible threat of prosecution sufficient to confer standing.

## B. Ripeness

"Ripeness and standing are closely related because they originate from the same Article III limitation." Mont. Env't Info. Ctr. v. Stone-Manning, 766 F.3d 1184, 1188 (9th Cir. 2014) (citing Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 n.5 (2014)). In fact, "in many cases, ripeness coincides squarely with standing's injury in fact prong." Thomas v. Anchorage Equal

Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) ("Indeed, because the focus of our ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline."). The requirement that a case or controversy exist under the Declaratory Judgment Act is "identical to Article III's constitutional case or controversy requirement." Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005) (quoting Am. States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994)). "If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction." Id.

For the reasons discussed above with respect to standing, the Court concludes that this case is ripe for review as to Palmer only. See Getman, 328 F.3d at 1093 ("Whether we frame our jurisdictional inquiry as one of standing or of ripeness, the analysis is the same."). Moreover, as a prudential matter, Palmer's "claim is fit for decision, because it is primarily legal and does not require substantial further factual development." See Wolfson, 616 F.3d at 1060. In addition, Palmer has alleged a hardship through the constitutionally recognized injury of self-censorship. See id.; see also Stormans, Inc. v. Selecky, 586 F.3d 1109, 1126 (9th Cir. 2009). Accordingly, the Court concludes that Palmer's claim is ripe.

### C. Failure to State a Claim

Finally, Defendants argue that Plaintiffs' claim fails "as a matter of binding Ninth Circuit precedent and under a long line of cases from other jurisdictions." (Motion at 11.) Plaintiffs allege that Section 2054 prohibits them "from engaging in lawful communication to accurately describe their qualifications and accomplishments by using the title 'Dr.' or the term 'doctor'" and thus violates their First Amendment free speech rights. (See Complaint ¶¶ 32–33.) Yet "[c]ourts have consistently held that Section 2054 and similar statutes are constitutional because they serve the important public interest of protecting the public from those who falsely hold themselves out as licensed physicians." (Motion at 11); see Brandwein v. Cal. Bd. of Osteopathic Examiners, 708 F.2d 1466, 1469–70 (9th Cir. 1983) (holding that the First Amendment rights of a physician holding a doctorate degree in osteopathy were not violated where Section 2054 prohibited him from holding himself out to the public as "M.D."). Although this may be true, Defendants' arguments are premature on a Rule 12(b)(6) motion to dismiss. See Wolfson, 616 F.3d at 1066.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion as to Plaintiffs Lewis and Jaravata-Hanson **WITH LEAVE TO AMEND** and **DENIES** the Motion as to Plaintiff Palmer. The September 18, 2023 hearing is **VACATED**. Plaintiffs may file an amended complaint, if any, no later than September 25, 2023.

**IT IS SO ORDERED.**